UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA BAKER,<br>    Plaintiff<br>v.<br>CONSUMER FINANCIAL PROTECTION BUREAU,<br>    Defendant | Civil Action No. 18-2403(CKK) |

**MEMORANDUM OPINION**
(November 1, 2018)

This is a Freedom of Information Act ("FOIA") action, in which Plaintiff Joshua Baker seeks records from the Consumer Financial Protection Bureau ("CFPB") regarding its investigation of Zillow Group, Inc. ("Zillow"). Before the Court is Plaintiff's [2] Motion for a Preliminary Injunction, which is opposed. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court DENIES Plaintiff's [2] Motion. The Court concludes that Plaintiff has not made the requisite showing for a preliminary injunction.

### I.     BACKGROUND

Plaintiff is an attorney employed by The Rosen Law Firm, P.A. ("Rosen"). Pl.'s Mot., ECF No. 2, 1. Plaintiff submitted a FOIA request on behalf of Rosen in connection with a securities class action in which Rosen is lead counsel. *Id.* In the class action, Rosen represents purchasers of Zillow securities, alleging violations of the Securities Exchange Act of 1934. *Id.* at

---

[1] The Court's consideration has focused on the following documents:
    • Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Mot."), ECF No. 2;
    • Def.'s Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Def.'s Opp'n"), ECF No. 5;
    • Pl.'s Reply Statement of Points and Authorities in Support of Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Reply"), ECF No. 7.
In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

2. On October 2, 2018, the judge presiding over the class action dismissed the amended complaint "without prejudice and with leave to amend." Compl., ECF No. 1, ¶ 17. The judge directed plaintiffs to file a second amended complaint by November 16, 2018. *Id.* Plaintiff contends that the documents he seeks in his FOIA request are critical to supporting the allegations in the second amended complaint, as Defendant has previously investigated Zillow for misconduct similar to that alleged in the class action but did not take any enforcement action. Id. at ¶¶ 16-18.

On July 26, 2018, Plaintiff filed a FOIA request with Defendant seeking access to the following:

> Any documents and/or correspondence related to the Civil Investigative Demand issued in 2015 by the Consumer Financial Protection Bureau to Zillow Group, Inc., including any documents and/or correspondence pertaining to the subsequent investigation.

Exhibit 1, ECF No. 2-2, 3. In response to Plaintiff's FOIA request, on July 24, 2018, Defendant sent an email attaching a letter dated June 27, 2018 acknowledging receipt of Plaintiff's request and assigning the request a case number. Exhibit 2, ECF No. 2-3, 2-3. That same day, Defendant sent another email containing a fee estimate for plaintiff's request. Exhibit 3, ECF No. 2-4, 3-4. Defendant estimated that the fee to search for documents responsive to Plaintiff's FOIA request would be $35,160 and required Plaintiff to make an advance payment before Defendant would start to process Plaintiff's request. *Id*. On July 25, 2018, Rosen sent a check to Defendant for the full amount. Weeks later, Plaintiff noticed that the check had never been cashed and contacted Defendant by email to inquire. Pl.'s Mot., ECF No. 2, 4. On August 17, 2018, Plaintiff contacted by telephone the FOIA analyst assigned to his case, who explained that Defendant had not cashed the check because it was likely that Defendant would withhold or redact the vast majority of documents requested. Prior to cashing the check, Defendant wanted to give Plaintiff an

opportunity to narrow his request. Declaration of Joshua Baker, ECF No. 2-1, ¶ 6. On October 2, 2018, Plaintiff emailed Defendant confirming that Plaintiff still wanted to proceed with the unaltered request. Exhibit 4, ECF No. 2-5, 2. On October 4, 2018, Plaintiff again spoke with the FOIA analyst assigned to his case who informed Plaintiff that his request would fall into the "complex" que and that there were approximately twenty "complex" requests ahead of Plaintiff's, so it would likely take six to nine months to process Plaintiff's request. Declaration of Joshua Baker, ECF No. 2-1, ¶ 8.

On October 18, 2018, Plaintiff filed a Complaint in this Court, and on October 19, 2018, Plaintiff filed his Motion for a Preliminary Injunction. Compl., ECF No. 1; Pl.'s Mot., ECF No. 2. In his motion, Plaintiff argues that Defendant failed to comply with FOIA's mandated time frame of twenty working days to respond to a FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiff asks this Court to issue a preliminary injunction ordering Defendant to release all responsive records by a date certain. Initially, Plaintiff requested that the Court order Defendant to release all responsive records by November 2, 2018. Given that briefing on Plaintiff's motion completed on October 30, 2018, this date for release would allow only two days for the Court to consider the matter and issue a decision and for Defendant to process over 630,000 potentially responsive documents. And, as Defendant previously informed Plaintiff, processing these records will be a substantial task as many of the documents will need to be withheld or redacted "given their nature as confidential business information produced to a law enforcement agency as part of an investigation and internal, predecisional, deliberative work product by attorneys and others engaged in a law enforcement investigation." Declaration of Raynell Lazier, ECF No. 5-1, ¶ 16. Accordingly, Plaintiff has reconsidered his initial deadline. If the Court finds Plaintiff's initial deadline infeasible, Plaintiff instead asks the Court to order

3

Defendant to produce all responsive documents within ninety days, with some productions occurring after thirty days and some occurring after sixty days. *See* Pl.'s Reply, ECF No. 7, 2.

## II. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). The Court notes that where, as here, the preliminary injunction would be a mandatory one, meaning that its terms would alter rather than preserve the status quo, the Court's power to issue a preliminary injunction "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

"The four factors have typically been evaluated on a 'sliding scale.'" *Davis*, 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as

4

strong a showing on another factor." *Id.* at 1291-92. But, it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the D.C. Circuit court have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). However, the Court of Appeals has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See Id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

### III. DISCUSSION

The Court begins by noting that Plaintiff did not request expedited processing of his FOIA request. Def.'s Opp'n, ECF No. 5, 1. Seeking expedited processing is the normal administrative procedure for requesting and obtaining prioritized resolution of a FOIA request. *See* Declaration of Raynell Lazier, ECF No. 5-1, ¶ 7. If such processing is not sought, Defendant considers the complexity of the request and other factors in deciding where in the processing queue the request falls. *Id.* In this case, having failed to request expedited processing administratively, Plaintiff asks this Court to help him jump from his position as approximately twentieth in the "complex" que and have his request processed before those of all of the other individuals waiting, including those approved for expedited processing. But even ignoring Plaintiff's failure to request expedited processing, the Court concludes that Plaintiff has failed to establish a likelihood of success on the merits, to show irreparable harm, or to demonstrate that

the balance of hardships and the public interest weigh in favor of injunctive relief. For these reasons, Plaintiff's Motion is DENIED.

### A. Plaintiff Fails to Establish a Likelihood of Success on the Merits

First, Plaintiff has not established a likelihood of success on the merits of his claim. Plaintiff argues that he has an "extremely high" likelihood of success on the merits because Defendant failed to comply with the statutory time limits imposed by FOIA. Pl.'s Mot., ECF No. 2, 7. Accordingly, Plaintiff argues that he is entitled to the immediate processing of his request and the release of responsive documents. But, Plaintiff's argument rests on a misunderstanding of FOIA's deadlines.

Plaintiff is correct that FOIA generally requires agencies to make a determination as to its anticipated response to an incoming FOIA request within twenty days. 5 U.S.C. § 552(a)(6)(A)(i) (giving an agency twenty days to decide "whether to comply with such request"). But, Plaintiff misunderstands the consequences that follow when an agency fails to meet this twenty-day deadline. Plaintiff argues that Defendant's failure to comply with the twenty-day deadline means that "Plaintiff is entitled to the immediate processing of his request and the release of the requested records." Pl.'s Mot., ECF No. 2, 7. But, an agency's violation of the twenty-day deadline does not entitle the requester to immediate processing and release of responsive documents. Instead, "this twenty-day deadline serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request." *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015). As the D.C. Circuit explained in the seminal case *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180 (D.C. Cir. 2013) ("*CREW*"), generally a FOIA requester is "required to exhaust administrative appeal remedies before seeking judicial redress." 711 F.3d at

184. But, when an agency fails to make an initial determination within twenty days, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* at 189. Rather, the requester is deemed to have exhausted his administrative remedies and can seek immediate judicial review of the agency's processing of the request. In sum, "*CREW* makes clear that the impact of blowing the 20-day deadline relates *only to the requester's ability to get into court*." *Electronic Privacy Info. Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) (emphasis in original) ("*EPIC II*").

In his reply, Plaintiff argues that Defendant has not shown the "exceptional circumstances" required under *CREW* before the agency is allowed to continue processing the request under the supervision of the court's authority, rather than immediately processing the request and releasing the documents. *CREW*, 711 F.3d at 189. The D.C. Circuit has explained that "exceptional circumstances exist when the agency is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits …, and when the agency can show that it is exercising due diligence in processing the requests." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 611 (D.C. Cir. 1976) (internal quotation marks omitted).

The Court concludes that Defendant has shown that exceptional circumstances exist. First, during the 2017 to 2018 fiscal year, Defendant experienced a significant increase in FOIA requests. According to Plaintiff, the number of FOIA requests received by CFPB "grew each fiscal year by an average of 25%." Pl.'s Reply, ECF No. 7, 4. But, from fiscal year 2017 to 2018, the number of requests increased dramatically by 47%. Declaration of Raynell Lazier, ECF No. 5-1, ¶ 6. Currently, Defendant has 174 pending FOIA requests, 75 of which are complex. *Id.*

Second, resources are not sufficient to deal with every FOIA request within the deadline. Until August of 2018, Defendant's FOIA Office had only three full-time staff. Defendant has recently increased that number to five full-time staff to deal with the increased workload. *Id.* Plaintiff faults Defendant for not doing more to meet the increased number of FOIA requests, such as detailing other CFPB employees to work on FOIA requests. Pl.'s Reply, ECF No. 7, 5-6. But, Plaintiff points to no authority which would require Defendant to take such steps before the Court can consider Defendant's "*existing* resources inadequate to deal with the volume of … requests." *Open America*, 547 F.2d at 611 (emphasis added). Moreover, Plaintiff has provided no indication of whether or not it would be feasible, under current conditions, for CFPB to take employees away from their normal tasks to process FOIA requests. Finally, Defendant has shown due diligence in processing the FOIA requests. Defendant has a system for prioritizing and processing FOIA requests and has five full-time staff working on those requests. Declaration of Raynell Lazier, ECF No. 5-1, ¶¶ 6-9. Considering only Plaintiff's FOIA request, Defendant has already assigned a FOIA analyst to Plaintiff's case and identified over 630,000 potentially responsive documents. *Id.* at ¶ 12. The fact that Defendant has not been able to review and release those responsive documents due to the approximately 100 FOIA requests ahead of Plaintiff's, twenty of which are complex, does not show a lack of diligence. *Id.* at ¶ 21.

Despite the D.C. Circuit's stance in *CREW*, Plaintiff relies on a prior district court decision, *Electronic Privacy Information Center v. Department of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ("*EPIC I*"), for the proposition that Defendant's breach of the twenty-day deadline entitles him to the immediate processing and release of his requested records. Pl.'s Mot., ECF No. 2, 7. But, Plaintiff's reliance on *EPIC I* is misplaced for at least two reasons. First, *EPIC I* was decided before *CREW* and as a district court decision has no precedential

effect. The *EPIC I* court did not have the benefit of the D.C. Circuit's later conclusion that the penalty for violating the twenty-day deadline is entry to court, not immediate processing and release of documents. *See EPIC II*, 15 F. Supp. 3d at 42. Second, the court in *EPIC I* ordered the release of the documents in large part because the agency had not presented any evidence regarding the impracticability of responding to the plaintiff's FOIA request within the twenty-day deadline. *EPIC I*, 416 F. Supp. 2d at 39-40. Here, Defendant has filed a declaration from Raynell Lazier, the FOIA Manager for CFPB, explaining the cause for the delay. According to Mr. Lazier, Defendant could not meet the twenty-day deadline due to the complexity of Plaintiff's FOIA requests, which yielded over 630,000 potentially responsive documents, and the approximately twenty other complex FOIA requests in the que ahead of Plaintiff's request. Declaration of Raynell Lazier, ECF No. 5-1, ¶ 21. According to Mr. Lazier, "[i]t is simply not feasible to process Plaintiff's FOIA request in 20 days, or even 30 days." *Id.*

In sum, the Court concludes that Plaintiff has not shown a likelihood of success on the merits. Defendant's failure to meet the twenty-day deadline entitled Plaintiff only to access to this Court, not to the immediate processing and release of the requested documents.

**B. Plaintiff Fails to Show Irreparable Harm**

Plaintiff has also not made a sufficient showing that he will suffer irreparable harm if a preliminary injunction is not issued. To show that a preliminary injunction is warranted, Plaintiff must demonstrate that there is a likelihood of irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury must be both certain and great; it must be

actual and not theoretical." *Id.* (internal quotation marks omitted). "Second, the injury must be beyond remediation." *Id.*

Here, as the Court reads Plaintiff's argument, Plaintiff asserts two grounds for irreparable harm. First, Plaintiff asserts that, if he is not granted swift access to the requested materials, he will not be able to include certain allegations in the amended complaint for his firm's securities class action against Zillow. Second, Plaintiff argues that the Zillow investigation concerns a matter of substantial societal attention, and a delay in the release of documents related to the investigation would render the information of little value. The Court is persuaded by neither argument.

First, Plaintiff argues that "[t]he fruits of Plaintiff's FOIA request will be critical to alleging the additional facts needed to support the class action plaintiff's claims[, and] [a]ny further delay in processing Plaintiff's request will cause irreparable injury to the public shareholders." Pl.'s Mot., ECF No. 2, 8. Plaintiff's asserted harm concerns only the shareholder-plaintiffs in the class action. This is not the type of harm that FOIA was created to address. Congress enacted FOIA as a means to "open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). While Plaintiff's rights under FOIA are not diminished by the personal reason for his request, neither is FOIA concerned with the effect disclosure or lack thereof will have on Plaintiff's lawsuit. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n.23 (1978).

Moreover, there is not a clear causal connection between Plaintiff obtaining the requested documents and Plaintiff being able to craft a more successful complaint in the class action. Plaintiff may be able to draft a more effective complaint using the requested documents, but Plaintiff falls far short of demonstrating that that this outcome is "certain," as opposed to

"theoretical." *Chaplaincy,* 454 F.3d at 297. And, Plaintiff has pointed to no case law supporting his proposition that the inability to draft a more effective complaint is a legally recognized irreparable harm.

Second, Plaintiff argues that "any further delay in processing Plaintiff's FOIA request will irreparably harm Plaintiff's and the public's abilities to obtain important information in a timely fashion." Pl.'s Mot., ECF No. 2, 8. Certainly, the "timely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA." *Daily Caller*, 152 F. Supp. 3d at 13. And, as the D.C. Circuit has noted "stale information is of little value." *Payne Enters., Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988). But, mindful of Plaintiff's interest in the timely disclosure of documents concerning matters of public interest, the Court is not convinced that Plaintiff will be irreparably harmed if the preliminary injunction is not granted. Besides his own pleading deadline, Plaintiff has not presented evidence of any time-sensitive need for the documents. And, the two cases cited by Plaintiff provide little support for his argument. First, *EPIC I* concerned the release of documents pertaining to the government's ongoing warrantless surveillance program, about which there was much more public interest and debate than that surrounding the Zillow investigation, which ended over four months ago. *See EPIC I*, 416 F. Supp. 2d at 40-41 (finding irreparable injury, in part, because "President Bush has invited meaningful debate about the warrantless surveillance program"). Second, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005), concerned a request for expedited processing rather than a motion for a preliminary injunction. 404 F. Supp. 2d at 259-60. Ignoring this obvious distinguishing factor, the *Gonzales* court found that the plaintiff had a compelling need for an expedited release of the information because the information was needed in plaintiff's campaign to re-authorize provisions of the Voting Rights Act which were

set to expire shortly. *Id.* at 260. In this case, Plaintiff has not demonstrated why the public requires the requested documents by a date certain.

Based on the above, the Court concludes that Plaintiff has not shown that the Court's denial of his motion for a preliminary injunction would result in irreparable harm.

**C. The Balance of Hardships and the Public Interest Weigh Against Plaintiff**

Finally, the Court finds that Plaintiff has not shown that the balance of hardships or the public interest weigh in favor of granting injunctive relief. "'These factors merge when the Government is the opposing party.'" *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When balancing the equities, the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks omitted). Moreover, "courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotation marks omitted).

By asking the Court to issue a preliminary injunction ordering the immediate processing and release of the requested records, Plaintiff is in effect asking the Government to expend resources to process quickly his request for documents needed for his clients' lawsuit, before processing the records of other requesters. Granting the type of request made by Plaintiff would harm the approximately 100 other requesters, 20 of whom have complex requests, in line ahead of Plaintiff and would erode the proper functioning of the FOIA system. As Mr. Lazier explained, immediate processing of Plaintiff's FOIA request "would disadvantage other requests that were filed prior to Plaintiff's or those requests that sought and were granted expedited processing." Declaration of Raynell Lazier, ECF No. 5-1, ¶ 21.

Despite this inequity, Plaintiff argues that the public interest would be served by the issuance of a preliminary injunction because "'there is an overriding public interest … in the general importance of an agency's faithful adherence to its statutory mandate,'" which in this case required Defendant to meet the twenty-day deadline. Pl.'s Mot., ECF No. 2, 9 (alteration in original) (quoting *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)). But, this interest must be balanced against the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released. *See* Declaration of Raynell Lazier, ECF No. 5-1, ¶ 21 (explaining that determining "whether any FOIA exemptions apply" to the over 630,000 records potentially responsive to Plaintiff's request "is a massive undertaking").

The Court is likewise not convinced by Plaintiff's argument that a preliminary injunction is in the public interest because "'[t]here is a public benefit in the release of information that adds to citizens' knowledge' of government activities." Pl.'s Mot., ECF No. 2, 10 (alteration added) (quoting *Ctr. To Prevent Handgun Violence. U.S. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999)). The Court finds that, as the core purpose of FOIA is to provide citizens with knowledge about what their government is up to, "[t]his explanation does nothing to distinguish [P]laintiff's FOIA request from any other FOIA request" and does not merit a preliminary injunction. *Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013).

Accordingly, the Court finds that both the balance of the hardships and the public interest weigh against granting a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons Plaintiff's [2] Motion for a Preliminary Injunction is DENIED. Plaintiff failed to show that he has a likelihood of success on the merits, that he will face irreparable harm, or that the balance of the hardships and the public interest weigh in Plaintiff's favor. An appropriate Order accompanies this Memorandum Opinion.

Dated: November 1, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge